J-S55002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                               :              PENNSYLVANIA
                               :
                v.                  :
                               :
                               :
ALEXANDER THOMAS TAYLOR       : 
                               :
            Appellant        :      No. 663 WDA 2018

Appeal from the Judgment of Sentence April 4, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0017134-2009

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:          **FILED NOVEMBER 14, 2019**

Alexander Thomas Taylor (Appellant) appeals from the judgment of
sentence imposed after the trial court revoked his probation.  Upon review,
we affirm.

The trial court recounted the factual and procedural background at
length:

> At a [s]entencing [h]earing held on August 10, 2010, . . . it
> was stipulated that the Affidavit of Probable Cause and relevant
> police reports and any lab reports in this matter formed a
> sufficient basis for Appellant's guilty plea [to] causing a minor to
> have indecent contact with him, when the minor was less than 13
> years old and not married (Count II) and corruption of a child
> under the age of 18 by inappropriate sexual contact when
> Appellant was over 18 (Count IV).[1]  Counts I, III, and V were
> withdrawn.  Details of the serious sexual offenses were not

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 6301(a)(1).

disclosed in open [c]ourt. At the time of the sentencing, Appellant was 20 years old.

By agreement, Appellant was sentenced to a period of incarceration for time served with a period of probation of five years to follow. He was required to register under the auspices of Megan's Law for a period of ten years. He was to be paroled within 48 hours and begin his period of five years probation, effective August 10, 2010.

On December 9, 2015, Appellant attended a Probation Violation Hearing before this [c]ourt. A pre-sentence report had been provided to the [c]ourt. Appellant had established residency in the state of Maryland three years earlier and his probation was transferred to the Maryland Department of Public Safety and Correctional Services. On June 30, 2014, during a maintenance polygraph, Appellant admitted to improper contact with a minor. On August 21, 2014, Maryland Officials submitted a Probation Violation Report. Appellant was charged, but pled not guilty and later adjudicated so. A new Probation Violation warrant was issued for Appellant due to his technical violation and he was extradited and transferred to the Allegheny County Jail. Probation requested that Appellant's probation be revoked and a new period of supervision with electronic monitoring be imposed. During open [c]ourt, the only reference to the probation violation was in the context that Appellant had been sent back from Maryland.

Appellant was released from [c]ounty jail on November 21, 2015, and placed on electronic monitoring. Probation reviewed the special conditions with Appellant and on December 1, 2015, he reported to the probation office. Again, the specific conditions were reviewed, and Appellant was also instructed to call and make an appointment with any of the sex offender treatment providers on a list given [to] him during this meeting. By December 9, 2015, Appellant had made no calls to anyone. This [c]ourt warned Appellant that his next hearing would be his last, because he would be put into state time for any further violation.

The [c]ourt then declared the Probation Violation Hearing a Stage 2 hearing and imposed zero tolerance. Probation was instructed that [if] Appellant violated the terms of his probation, to notify the [c]ourt and another hearing would be scheduled. Appellant's probation was revoked and he was given another five years probation, nine months on electronic monitoring, and

- 2 -

specific conditions, which [h]is counsel assured the court she had reviewed with Appellant twice.

Appellant's final Probation Violation Hearing was held before this [c]ourt on April 4, 2018. A pre-sentence report was provided to the [c]ourt. Appellant had appeared on January 10, 2018 for a **Gagnon I** violation hearing.[2] He had been cited for violations including being unsuccessfully discharged from sex offender treatment due to lack of progress and continued denial of the offenses and lack of motivation. Noting that this was not Appellant's first violation, as he was in violation of his supervision back in 2015, due to violations including out-of-state for sexual offenses on children. He had two years treatment in Allegheny County and failed to make necessary adjustments and progress needed to comply with the terms of his probation. The [p]robation department recommended that Appellant's probation be revoked and that this time he be sentenced to a period of incarceration. Defense counsel argued that Appellant did not violate his probation because he was mentally ill, but trying, and he believed he was making progress. Probation countered that he had been receiving lack of progress reports from Appellant's therapist since June of 2017, and that issue was discussed with Appellant on a monthly basis. In November of 2017, Appellant was confronted by group members and admitted to having inappropriate thoughts and feelings. Appellant was discharged from treatment also because he was denying that any sexual advances occurred in the underlying Pennsylvania case.

This [c]ourt quoted from the pre-sentence report the following:

"The goal of sex offender treatment is to rehabilitate the Defendant and to prevent further victimization. These goals cannot be attained if the Defendant continues to minimize the severity of his offenses and his deviant behavior."

Appellant was reminded that he had multiple occasions to make a positive adjustment and had not complied with community supervision, that the victims in this case were ages five and seven, and that in 2017 he had admitted having past victims in this case, but still did not make any progress.

---

[2] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

Accordingly, Appellant's probation was revoked and he was sentenced to 3½ to 7 years incarceration with credit for time served.

Trial Court Opinion, 1/22/19, at 2-5 (citations to notes of testimony omitted).

On April 16, 2018, Appellant filed a timely post-sentence motion. The trial court denied the motion and Appellant filed a timely notice of appeal. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents two issues for review:

[1.] WHETHER THE TESTIMONY FAILED TO ESTABLISH, BY A PREPONDERANCE OF THE EVIDENCE, THAT [APPELLANT] COMMITTED A VIOLATION OF HIS PROBATION?

[2.] IN REVOKING [APPELLANT'S] PROBATION AND RE-SENTENCING HIM, IN THE AGGREGATE, TO 2½-6[3] YEARS' TOTAL STATE CONFINEMENT, WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY IGNORING [APPELLANT'S] REHABILITATIVE NEEDS AND THE NEEDS OF THE COMMUNITY, AS REQUIRED BY 42 Pa.C.S.A. § 9721(b)?

Appellant's Brief at 6.

In his first issue, Appellant challenges the sufficiency of the evidence produced at his **Gagnon II** hearing, claiming that the Commonwealth "failed to establish, by a preponderance of the evidence, that he committed a violation of his probation." Appellant's Brief at 19. Appellant does not dispute

---

[3] Appellant's April 4, 2018 sentencing order reflects a sentence of 3½ to 7 years of incarceration. **See** Trial Court Order of Sentence, 4/4/18, at *1. It appears Appellant subtracted the credit for time served in calculating his aggregate sentence, which may explain the discrepancy in the length of his incarceration in his question presented.

that sex offender treatment was a condition of his probation and that he was "unsuccessfully discharged from sex offender treatment." N.T., 4/4/18, at 2. Rather, Appellant argues that because he was discharged for progressing "too slowly," the trial court erred in finding him in violation of his probation. Appellant's Brief at 16 ("In other words, [Appellant] was not discharged because he failed to attend treatment or failed to participate in the program; rather, [Appellant] was discharged because he was progressing too slowly."). He further states:

> In order to sufficiently prove that [Appellant] willfully and flagrantly disregarded his duties and obligations of sex offender treatment, the Commonwealth needed to present testimony explaining how and to what extent [Appellant] performed in treatment. The Commonwealth simply did not do that here. Instead, the record demonstrates only that, although his progress may have been slow in coming, [Appellant] nevertheless was making a good-faith effort to participate in, and successfully complete, sex offender treatment. Given these circumstances, the trial court's finding of a violation cannot, as a matter of law, be sustained, and Appellant's judgment of sentence must be vacated.

Appellant's Brief at 28-29. We disagree.

"Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." ***Commonwealth v. Ahmad***, 961 A.2d 884, 888 (Pa. Super. 2008) (citation omitted).

Relevant to the revocation of a probationary sentence, Section 9771 of the Sentencing Code provides:

**(a) General rule.--**The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

**(b) Revocation.--**The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

**(c) Limitation on sentence of total confinement.--**The court shall not impose a sentence of total confinement upon revocation unless it finds that:

> (1) the defendant has been convicted of another crime; or
>
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>
> (3) such a sentence is essential to vindicate the authority of the court.

**(d) Hearing required.--**There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation. Probation may be eliminated or the term decreased without a hearing.

42 Pa.C.S.A. § 9771.

We recognize:

> The first step in a *Gagnon II* revocation decision involves a wholly retrospective factual question: whether the parolee or probationer has in fact acted in violation of one or more conditions of his parole or probation. It is this fact that must be demonstrated by evidence containing probative value. Only if it is determined that the parolee or probationer did violate the conditions does the second question arise: should the parolee or probationer be

recommitted to prison or should other steps be taken to protect society and improve changes of rehabilitation?

*Commonwealth v. Moriarty*, 180 A.3d 1279, 1286 (Pa. Super. 2018) (citation omitted). "Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements of the offenses charged beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of [] probation by a preponderance of the evidence." *Id.* (citation omitted).

The Pennsylvania Supreme Court's recent decision in *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019), addresses when a defendant may be found to have violated probation. In *Foster*, the defendant was on probation when he was detained by his probation officer for posting photographs to his social media accounts "depict[ing] guns, drugs, large amounts of money and his sentencing sheet from his plea agreement[.]" *Id.* at 1243. At defendant's revocation hearing, the Commonwealth argued that posting the photos was a violation of probation because the photos depicted contraband belonging to the defendant. The Commonwealth asserted that the defendant "was using his social media accounts as an ad agency to sell the drugs." *Id.* However, "[o]ther than the photographs in question, the Commonwealth presented no evidence at either [violation of probation] hearing in support of its contentions. At no time did the Commonwealth mention the conditions of [defendant's] current probation, or suggest that his conduct violated a specific condition." *Id.* at 1244.

At the conclusion of the defendant's *Gagnon II* hearing, the trial court found him in violation of his probation and resentenced him to a period of incarceration. *Foster*, 214 A.3d at 1244. The defendant appealed, and this Court affirmed. Our Supreme Court granted allowance of appeal to address the following issue:

> Did not the Superior Court err by ignoring the governing statute and due process protections that permit revocation only for a violation of specified conditions of probation, and by holding that [defendant's] inappropriate offensive social media posting, that violated no condition of probation, warranted revocation?

*Id.* at 1245-46.

In reversing this Court, the Supreme Court held that a court may find a defendant in violation of probation only if the defendant has violated one of the "specific conditions" of probation or committed a new crime. *Id.* at 1250. Therefore, in order to revoke probation:

> The [] court must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime to be found in violation. Absent such evidence, a violation of probation does not occur solely because a judge believes the probationer's conduct indicates that probation has been ineffective to rehabilitate or to deter against antisocial conduct.

*Id.* at 1243.

Instantly, Appellant's case is distinguishable from *Foster* because the trial court found Appellant to have violated "a specific condition" of his probation. In its December 9, 2015 sentencing order, the trial court specified:

> Sex Offender Court - Special Conditions: [Appellant] is to comply with the Special Conditions of the Sex Offender Court. Other:

[Appellant] is placed on ZERO TOLERANCE, per SOC Review Hearing on 12/9/15.

Trial Court Order, 12/9/15, at 1. As noted above, Appellant does not argue that sex offender treatment was not part of the "Special Conditions of Sex Offender Court."

On December 27, 2017, the Commonwealth filed a *Gagnon I* Probation Violation Report in which Appellant's probation officer requested a *Gagnon II* hearing. The report states:

[Appellant's] Charge Specific Special Conditions include: **"[Appellant] shall attend and participate in a mental health treatment program and/or sex offender treatment program as approved and directed by the probation/parole officer . . ."**

[Appellant] is currently in violation of PROBATION by reason of the following:

Following his previous revocation hearing in December of 2015, [Appellant] started attending sex offender treatment with Mercy Behavioral Health-The Gatehouse. Unfortunately, despite having attended regularly for approximately two years and multiple warnings regarding his treatment progress, **[Appellant] was unsuccessfully discharged from his Court ordered sex offender treatment program on 12-6-17, due to "Failure to follow through with your recommended treatment plan" and "Continued denial of the offense(s) and lack of motivation."** . . .

The goals of sex offender treatment are to rehabilitate [Appellant] and prevent further victimization. These goals cannot be attained if [Appellant] continues to minimize the severity of his offense and deviant behaviors. [Appellant] has been provided multiple opportunities to make positive adjustments and comply with community supervision, namely his Court ordered sex offender treatment program.

> It is respectfully recommended a **Gagnon II** Violation Hearing be held; at which time the Probation Department will recommend that [Appellant's] probation be revoked, and a period of incarceration be imposed.

**Gagnon I** Probation Violation Report, 12/27/17, at 2 (headings omitted, emphasis added).

The trial court convened a **Gagnon II** hearing at which Appellant's probation officer, Pedro Hersan, testified that Appellant was "unsuccessfully discharged from sex offender treatment due to lack of progress and continued denial of the offense and lack of motivation." N.T., 4/4/18, at 2. Further noting that Appellant was two years into treatment and failed "to make the necessary adjustments and progress needed to comply," Mr. Hersan recommended that the trial court revoke Appellant's probation and resentence him to a period of incarceration. **Id.** at 2-3. On April 4, 2018, the court revoked Appellant's probation and resentenced him to incarceration. **Id.** at 9-10.

Our review confirms that Appellant's probation officer filed a probation violation report because Appellant failed to meet the specific condition requiring him to attend and participate in sex offender treatment. Appellant concedes that he was **discharged** from sex offender treatment. **See e.g.**, Appellant's Brief at 16. Thus, based on a preponderance of the evidence, the trial court concluded that Appellant violated his probation. **Foster**, 214 A.3d at 1243; **see also** N.T., 4/4/18, at 10. Appellant's first issue challenging the sufficiency of the evidence lacks merit.

In his second issue, Appellant challenges the discretionary aspects of his sentence. We recognize:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Simmons*, 56 A.3d 1280, 1283-84 (Pa. Super. 2012) (citations omitted). "Also, upon sentencing following a revocation of probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." *Id.* at 1286-87 (citation omitted).

Further, "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a

- 11 -

plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Appellant has complied with the first three prongs of this test by raising his sentencing claim in a timely post-sentence motion, filing a timely notice of appeal, and including in his brief a Rule 2119(f) concise statement. *See* Appellant's Brief at 30-36. Therefore, we examine whether Appellant presents a substantial question.

Appellant's discretionary claim alleges the trial court, "ignor[ed] Appellant's] rehabilitative needs and the needs of the community, as required by 42 Pa.C.S.A. § 9721(b)[.]" Appellant's Brief at 6; *see* 42 Pa.C.S.A. § 9721(b) (sentencing court shall follow general principle that sentence imposed should call for confinement that is consistent with the protection of the public, gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant). This claim presents a substantial question. *See Commonwealth v. Derry*, 150 A.3d 987, 994-95 (Pa. Super. 2016) (claim that a VOP sentencing court failed to consider the factors under 42 Pa.C.S.A. § 9721(b) raises a substantial question).

Appellant also claims that the trial court relied upon an impermissible factor in imposing an excessive sentence. *See* Appellant's Brief at 33-34.

This claim also raises a substantial question. *See Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003) ("This Court has held that a claim that the sentence is excessive because the trial court relied on impermissible factors raises a substantial question.") (citation omitted).

Turning to the merits, we reiterate:

Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. 42 Pa.C.S. § 9771(b). However, the imposition of total confinement upon revocation requires a finding that either "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. 9771(c).

*Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015) (footnote omitted). Further:

In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

Following revocation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence of total confinement, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender. *Commonwealth v. Crump*, 995

A.2d 1280, 1283 (Pa. Super. 2010). Also, "[w]hen a sentencing court has reviewed a pre-sentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." **Baker**, 72 A.3d at 663 (citing **Commonwealth v. Fowler**, 893 A.2d 758, 767 (Pa. Super. 2006)).

Here, the trial court stated that it had read and considered Appellant's pre-sentence investigation report. N.T., 4/4/18, at 2. "Our Supreme Court has determined that where the trial court is informed by a [pre-sentence investigation report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Edwards**, 194 A.3d 625, 637-38 (Pa. Super. 2018) (citation omitted), *appeal denied,* 202 A.3d 41. Accordingly, we conclude that the trial court considered the required factors and considerations, including those delineated in Section 9721(b) of the Sentencing Code, in sentencing Appellant.

Appellant further claims that the trial court "improperly considered conduct for which [Appellant] went to trial on in Maryland, and was fully acquitted by a jury of his peers." Appellant's Brief at 45. Appellant contends it was error for the trial court to make the following statement:

> But [Appellant] did fail the polygraph regarding sexual contact with the two-year-old girl in Maryland. In that case he was found not guilty, although [Appellant] did admit that the offense had occurred.

N.T., 4/4/18, at 7-8.

- 14 -

With respect to the consideration of impermissible sentencing factors, we have explained:

> It is an abuse of discretion, as a denial of due process of law, for the sentencing court to consider irrelevant factors during sentencing. Thus, previous sentences have been vacated because, in imposing sentence, the sentencing court relied upon, *e.g.*: the defendant's decision to stand trial rather than plead guilty, **Commonwealth v. Bethea**, [] 379 A.2d 102, 106, 107 ([Pa.] 1977); prior constitutionally infirm convictions, **Commonwealth v. Calvert**, [] 344 A.2d 797 ([Pa.] 1975); the defendant's political ideology, **Commonwealth v. Berrigan**, [] 535 A.2d 91 ([Pa. Super.] 1987) (*en banc*) . . .; unverified hearsay, *id.*; and the defendant's status as a naturalized citizen, **Commonwealth v. Dugan**, [] 483 A.2d 965 (Pa. Super. 1984).

**Commonwealth v. Smithton**, 631 A.2d 1053, 1056-57 (Pa. Super. 1993).

Likewise, "[i]t is beyond peradventure that when a defendant has been exonerated in the legal system, either by a jury or on constitutional grounds, with respect to a criminal act, that act cannot be used to enhance a sentence." **Commonwealth v. P.L.S.**, 894 A.2d 120, 130 (Pa. Super. 2006) (citations omitted). However, "[i]t is not enough that a trial court simply **entertained** impermissible evidence in its deliberations." **Smithton**, 631 A.2d at 1057 (emphasis in original). "A court is ordinarily presumed to be capable of identifying and properly disregarding all but the most prejudicial and inflammatory evidence." **Id.** (citation omitted). "Thus, a sentence must be vacated only where it reasonably appears from the record that the trial court **relied** in whole or in part upon such an impermissible factor." **Id.** (emphasis in original, citation omitted).

- 15 -

After careful consideration, we conclude the trial court did not rely on an impermissible factor in imposing Appellant's sentence. In reviewing the record, including the notes of testimony from Appellant's hearing, it is clear that while the trial court made a passing reference to an impermissible factor, *i.e.*, Appellant's case in Maryland, the trial court did not **rely** on that factor in sentencing Appellant. The trial court articulated its reasoning as follows:

> Okay. I do find that it's some mitigation, that you have been employed and that there were times when you were in compliance. However - - and I'm going to quote from the presentence report.
>
> "The goal of sex offender treatment is to rehabilitate [Appellant] and to prevent further victimization. These goals cannot be attained if [Appellant] continues to minimize the severity of his offenses and his deviant behaviors."
>
> You have been provided with multiple occasions to make a positive adjustment and have not complied with community supervision. I would also add that you -- in 2007 you admitted having passed [*sic*] victims in the case, but still did not make any progress. I would also add that the victims in the case which are before me were ages five and seven. **For these reasons** I find it is not appropriate for County supervision. And I'm going to at Count 2 revoke and order you to serve three and a half to seven years with credit for time served. . . .

N.T., 4/4/18, at 9-10 (emphasis added).

Consistent with the foregoing, we find no merit to Appellant's claim that the trial court relied on an impermissible factor in imposing his sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins the memorandum.

Judge Colins files a dissenting memorandum.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/14/2019